Jonathan Shub (CA Bar #237708)
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: 215-238-1700
Email: jshub@kohnswift.com
          klaukaitis@kohnswift.com

*Attorneys for Plaintiff and the Class*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELENE COLETTE and LETICIA SHAW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CV SCIENCES, INC., a California Corporation,<br><br>Defendant. | Civil Action No.:_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Michelene Colette and Leticia Shaw (collectively, "Plaintiffs"), through their undersigned attorneys, Barbat, Mansour & Suciu PLLC, Kohn, Swift & Graf, P.C. and Greg Coleman Law PC, brings this Class Action Complaint against Defendant CV Sciences, Inc. ("Defendant"), individually and on behalf of

1

**CLASS ACTION COMPLAINT**

all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiffs on behalf of consumers who purchased Defendant's "CBD Sprays", "CBD Oil Drops", "CBD Gummies", "CBD Capsules", and "CBD Softgels" (collectively the "CBD Products" or the "Products")[1], all of which are promoted as products containing cannabidiol (CBD), for personal use and not for resale.

2.      Defendant's Products, however, are illegal to sell.

3.      Defendant formulates, manufactures, advertises, and sells the CBD Products throughout the United States, including in the State of California and Arizona.

4.      The CBD (cannabidiol) Product market is a multibillion-dollar business enterprise that is lucrative for its market participants and is expected to further expand into a $16 billion-dollar industry by 2025.[2]

---

[1] The Products contain numerous different flavors and dosages.

[2] https://www.forbes.com/sites/irisdorbian/2019/03/12/cbd-market-could-pull-in-16-bln-by-2025-says-study/#69e764bb3efd Last Visited November 30, 2019

2

**CLASS ACTION COMPLAINT**

5.    With knowledge of growing consumer demand for CBD Products, Defendant has intentionally marketed and sold illegal CBD products.

6.    Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that harms the public.

7.    Accordingly, Plaintiffs and each of the Class members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

8.    Plaintiffs bring this suit to halt the unlawful sales and marketing of the CBD Products by Defendant and for damages she sustained as a result.  Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

9.    Plaintiffs and each of the Class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).    The amount in controversy in this class action exceeds

**CLASS ACTION COMPLAINT**

$5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

11.     This Court has personal jurisdiction over Defendant in this matter.  The acts and omissions giving rise to this action occurred in the state of California. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant was engaged in business activities in the state of California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

**CLASS ACTION COMPLAINT**

## PARTIES

13. Plaintiff Michelene Colette is a citizen of Arizona who resides in Oracle, Arizona. Plaintiff purchased Defendant's CBD Spray product from Defendant's CBD sales representative in New York. Plaintiff purchased Defendant's CBD Spray approximately two years ago for approximately $60. If Plaintiff knew the Products were not legally sold in the United States, Plaintiff would have not purchased them.

14. Plaintiff Leticia Shaw is a citizen of California who resides in Los Angeles, California. On September 27, 2018, Plaintiff Shaw purchased Defendant's CBD Oil Softgels 15mg Gold Formula from Defendant's website, https://pluscbdoil.com/, for a total cost of $90.53, including tax and shipping. If Plaintiff knew the Products were not legally sold in the United States, Plaintiff would have not purchased them.

15. Defendant CV Sciences, Inc. is a California corporation with its principal place of business at 10070 Barnes Canyon Rd., San Diego, CA 92121.

## FACTUAL ALLEGATIONS

16. At all relevant times, Defendant has marketed its Products in a consistent and uniform manner. Defendant sells the Products in all 50 states on its website and through various distributors and sales channels.

**CLASS ACTION COMPLAINT**

### *DEFENDANT'S ILLEGAL PRODUCTS*

17.     On November 22, 2019, the United States Food & Drug Administration sent roughly 15 Warning Letters discussing numerous violations of CBD products, including but not limited to; Dietary Supplement Labeling, Unapproved New Drugs, Misbranded Drugs, Adulterated Human Foods, Unapproved New Animal Drugs, and Adultered Animal Foods.   All of these violations of the Food, Drug and Cosmetic Act make CBD products illegal to sell.[3]

### *Dietary Supplement Labeling*

18.     All of Defendant's Products are mislabeled as Dietary Supplements or contain the illegal dietary ingredient CBD.  Every product contains a Supplement Facts section on the back of the container which is reserved for dietary supplements and explicitly state "Dietary Supplement" on the front of the packaging:

---

[3] *See* https://www.fda.gov/news-events/press-announcements/fda-warns-15-companies-illegally-selling-various-products-containing-cannabidiol-agency-details?utm_campaign=112519_Statement_FDA%20warns%20companies%20for%20illegally%20selling%20various%20products%20containing%20cannabidiol&utm_medium=email&utm_source=Eloqua Last visited November 27, 2019.

6

**CLASS ACTION COMPLAINT**



**CLASS ACTION COMPLAINT**



19.     The FDA has stated that CBD may not be labeled as a dietary

ingredient or legally be contained within a dietary supplement[4]:

---

[4] *See* https://www.fda.gov/consumers/consumer-updates/what-you-need-know-and-what-were-working-find-out-about-products-containing-cannabis-or-cannabis
Last Visited November 27, 2019.

**CLASS ACTION COMPLAINT**

- The FDA has approved only one CBD product, a prescription drug product to treat two rare, severe forms of epilepsy.
- It is currently illegal to market CBD by adding it to a food or labeling it as a dietary supplement.
- The FDA has seen only limited data about CBD safety and these data point to real risks that need to be considered before taking CBD for any reason.

20.     Defendant's Products cannot be dietary supplements because they do not meet the definition of a dietary supplement under section 201(ff) of the FD&C Act, 21 U.S.C. 321(ff).  The FDA has concluded, based on available evidence, that CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B)(i) and (ii). Under those provisions, if an article (such as CBD) is an active ingredient in a drug product that has been approved under section 505 of the FD&C Act, 21 U.S.C. 355, or has been authorized for investigation as a new drug for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public, then products containing that substance are outside the definition of a dietary supplement.[5]  There is an exception if the

---

[5] CBD is the active ingredient in the approved drug product Epidiolex. Furthermore, the existence of substantial clinical investigations regarding CBD has been made public. For example, two such substantial clinical investigations include GW Pharmaceuticals' investigations regarding Sativex and Epidiolex.  (See Sativex Commences US Phase II/III Clinical Trial in Cancer PainExternal Link Disclaimer and GW Pharmaceuticals Receives Investigational New Drug (IND) from FDA for Phase 2/3 Clinical Trial of Epidiolex in the Treatment of Dravet SyndromeExternal Link Disclaimer). FDA considers a substance to be "authorized for investigation as a new drug" if it is the subject of an Investigational New Drug

9

**CLASS ACTION COMPLAINT**

substance was "marketed as" a dietary supplement or as a conventional food before the new drug investigations were authorized; however, based on the evidence available to the FDA, the FDA has concluded that this is not the case for CBD.  The FDA is not aware of any evidence that would call into question its current conclusion that CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act.

### *Sublingual Delivery System*

21.     Defendant's Spray product directs consumers to spray the CBD product in mouth and swish around for a specific amount of time:

**INSTRUCTIONS:** Spray twice in mouth, hold for up to 30 seconds, then swallow.

*See* https://pluscbdoil.com/cbd-product/cbd-oil-spray/ Last visited November 27, 2019.

22.     The FD&C Act defines the term "dietary supplement" in section 201(ff)(2)(A)(i) of the FD&C Act, 21 U.S.C. 321(ff)(2)(A)(i), as a product that is "intended for ingestion."  Because sublingual products are intended to enter the body directly through the skin or mucosal tissues, they are not intended for

application (IND) that has gone into effect. Under 21 CFR 312.2, unless a clinical investigation meets the limited criteria in that regulation, an IND is required for all clinical investigations of products that are subject to section 505 of the FD&C Act.

**CLASS ACTION COMPLAINT**

ingestion.  Therefore, the product bears directions for use as a sublingual product, such product does not meet the definition of a dietary supplement under the FD&C Act.

23.     Defendant's conduct is also deceptive, unfair, and unlawful in that it violates the prohibition against the sale of adulterated and misbranded products under California's Sherman Laws, which adopt the federal labeling regulations as the food labeling requirements of the state. Cal. Health & Safety Code § 110100.

24.     The introduction of adulterated and misbranded food into interstate commerce is prohibited under the FDCA and the parallel state statute cited in this Class Action Complaint.

25.     Plaintiffs and Class Members would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant.

26.     Defendant intended for Plaintiffs and the Class members to be deceived or misled.

27.     Defendant's deceptive and misleading practices proximately caused harm to the Plaintiffs and the Class.

28.     Plaintiffs and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

**CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

29.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class").  Excluded from the Class are Defendant, and its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to seek narrower multi-state subclasses as appropriate.

30.     Plaintiff Shaw also seeks to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass").  Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

31.     Plaintiff Colette also seeks to represent a Subclass of all persons in Arizona who purchased the Products during the class period (the "Arizona Subclass").  Excluded from the Arizona Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

32.     Plaintiffs further reserve the right to redefine the Class(es), and/or requests for relief.

**CLASS ACTION COMPLAINT**

33. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34. The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

35. The exact number of Class members is unknown. Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiffs believe the Class consists of thousands of consumers.

36. Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiffs and Class members.

37. Common questions of law and fact that affect Class members include, but are not limited to:

    a. Whether the Products, when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use, works as advertised, marketed, and conveyed to consumers;

    b. Whether, in the course of business, Defendant represented that the Products have characteristics, uses, benefits, or qualities that they do not have when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use;

    c. Whether the claims Defendant made and is making regarding the Products are unfair or deceptive; specifically, whether the Products

**CLASS ACTION COMPLAINT**

were illegally labeled as dietary supplements with illegal delivery instructions;

d.  Whether Defendant knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Products that Defendant was claiming they would receive;

e.  Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

f.  Whether Defendant knew or should have known that the representations and advertisements regarding the Products were unsubstantiated, false, and misleading;

g.  Whether Defendant has breached express and implied warranties in the sale and marketing of the Products;

h.  Whether Defendant's conduct violates public policy;

i.  Whether Defendant's acts and omissions violate California law;

j.  Whether Defendant's act and omissions violate the Arizona consumer protection law;

k.  Whether Defendant has been unjustly enriched by the sale of the Products to the Plaintiffs and the Class Members;

l.  Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

m. Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

n.  Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

**CLASS ACTION COMPLAINT**

38.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, are pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

39.     Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

40.     The named Plaintiffs will fairly and adequately assert and protect the interests of the Class.  Specifically, they have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

a.  The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

b.  The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.  There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

**CLASS ACTION COMPLAINT**

d.  Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

e.  Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.  The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

## CAUSES OF ACTION

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq.  ("UCL")**
**(On Behalf of the California Subclass)**

41.   Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 40, as though set forth fully herein.

42.   Plaintiff Shaw brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

43.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

44.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

16

**CLASS ACTION COMPLAINT**

45.     <u>Unlawful</u>:   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.      The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

b.      The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

c.      The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and

d.      The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

46.     <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

47.     Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

48.     Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not

**CLASS ACTION COMPLAINT**

outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

49.     <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

50.     As set forth herein, Defendant's claims relating the ingredients stated on the Products' labeling and moreover that the Products were labeled as illegal dietary supplements with illegal delivery instruction is likely to mislead reasonable consumers to believe the product is legal to purchase.

51.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

52.     Plaintiff and California Subclass Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging.  Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

53.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other California Subclass Members.  Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

54.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,

**CLASS ACTION COMPLAINT**

and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

55.     Plaintiff and the California Subclass also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT II**
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of the California Subclass)**

56.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 as if fully set forth herein.

57.     Plaintiff Shaw brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

58.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

//

//

**CLASS ACTION COMPLAINT**

59.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

60.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably as to the ingredients and effectiveness of the Products.

61.     Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because she purchased the Products in reliance on Defendant's false and misleading labeling claims that the Products, among other things, that the Products contained the ingredients stated on the Products' labeling and moreover that the Products were labeled as legal dietary supplements with legal delivery instruction as claimed on the Products' labeling and Defendant's website.

62.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

63.     Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

**CLASS ACTION COMPLAINT**

64.     As a result, Plaintiff, the California Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

65.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Subclass, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT III
### California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Subclass)

66.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 as if fully set forth herein.

67.     Plaintiff Shaw brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

68.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

69.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for

21

**CLASS ACTION COMPLAINT**

personal, family, or household purposes by Plaintiff and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

70.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

71.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

72.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Class Action Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices.  If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

**CLASS ACTION COMPLAINT**

73.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

### COUNT IV
### Breach of Express Warranties
### Cal. Com. Code § 2313(1)
### (On Behalf of the California Subclass)

74.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 as if fully set forth herein.

75.     Plaintiff Shaw brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

76.     Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the California Subclass purchased the Products in reasonable reliance on those statements.  Cal. Com. Code § 2313(1).

77.     Defendant breached the express warranties by selling Products that do not and cannot provide the promised benefits and moreover by selling Products that are illegally labeled as dietary supplements with illegal delivery instructions.

**CLASS ACTION COMPLAINT**

78.    Plaintiff and the California Subclass Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products contained.

79.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and California Subclass members paid for the Products.

80.    Furthermore, Defendant had actual knowledge of the defect in the Products purchased by Plaintiff, as well as the Products purchased by other members of the Class, because it had actual knowledge of the nature, ingredients and qualities of the ingredients in its Products by virtue of its own Products' testing and it knows that the affirmations and representations it makes concerning the nature, benefits, ingredients and quantities on the Products' labeling and Defendant's website and advertising is false.

81.    As a result of Defendant's breach of warranty, Plaintiff and California Subclass Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

//

//

//

//

**CLASS ACTION COMPLAINT**

## COUNT V
### Breach of Implied Warranty of Merchantability
### Cal. Com. Code § 2314
### (On Behalf of the California Subclass)

82.     Plaintiffs reallege and incorporate by reference paragraphs 1-40 as if fully set forth herein.

83.     Plaintiff Shaw brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

84.     Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the California Subclass that, among other things, the Products were labeled as legal dietary supplements with legal delivery instructions.

85.     Plaintiff and the California Subclass bought the Products manufactured, advertised, and sold by Defendant, as described herein.

86.     Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the California Subclass Members, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

87.     However, Defendant breached that implied warranty in that the Products provide no benefits, as set forth in detail herein.

**CLASS ACTION COMPLAINT**

88.     As an actual and proximate result of Defendant's conduct, Plaintiff and the California Subclass did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

89.     Plaintiff and the California Subclass have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

## COUNT VI
### Breach of Express Warranties
### Ariz. Rev. Stat. § 47-2313, *et seq.*
### (On Behalf of the Arizona Subclass)

90.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 as if fully set forth herein.

91.     Plaintiff Colette brings this claim individually and on behalf of the members of the proposed Arizona Subclass against Defendant.

92.     Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Arizona Subclass purchased the Products in reasonable reliance on those statements.  Ariz. Rev. Stat. § 47-2313(A)

**CLASS ACTION COMPLAINT**

93.     Defendant breached the express warranties by selling Products that do not and cannot provide the promised benefits and moreover by selling Products that are illegally labeled as dietary supplements with illegal delivery instructions.

94.     Plaintiff and the Arizona Subclass Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products contained.

95.     That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Arizona Subclass members paid for the Products.

96.     Furthermore, Defendant had actual knowledge of the defect in the Products purchased by Plaintiff, as well as the Products purchased by other members of the Arizona Subclass, because it had actual knowledge of the nature, ingredients and qualities of the ingredients in its Products by virtue of its own Products' testing and it knows that the affirmations and representations it makes concerning the nature, benefits, ingredients and quantities on the Products' labeling and Defendant's website and advertising is false.

97.     As a result of Defendant's breach of warranty, Plaintiff and Arizona Subclass Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

**CLASS ACTION COMPLAINT**

## COUNT VII
### Breach of Implied Warranty of Merchantability
### Ariz. Rev. Stat. § 47-2314, *et seq.*
### (On Behalf of the Arizona Subclass)

98.     Plaintiffs reallege and incorporate by reference paragraphs 1-40 as if fully set forth herein.

99.     Plaintiff Colette brings this claim individually and on behalf of the members of the proposed Arizona Subclass against Defendant.

100.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Arizona Subclass that, among other things, that the Products were labeled as legal dietary supplements with legal delivery instructions.

101.    Plaintiff and the Arizona Subclass bought the Products manufactured, advertised, and sold by Defendant, as described herein.

102.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Arizona Subclass, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

103.    However, Defendant breached that implied warranty in that the Products provide no benefits, as set forth in detail herein, and more the Products are actually labeled as illegal dietary supplements with illegal delivery instructions.

**CLASS ACTION COMPLAINT**

104.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Arizona Subclass did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

105.    Plaintiff and the Arizona Subclass have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

**COUNT VIII**
**Violation of Arizona Consumer Fraud Act,**
**Ariz. Rev. Stat. § 44-1521, *et seq*.**
**(On behalf of the Arizona Subclass)**

106.    Plaintiffs reallege and incorporate by reference paragraphs 1-40 as if fully set forth herein.

107.    Plaintiff Colette brings this claim individually and on behalf of the members of the proposed Arizona Subclass against Defendant.

108.    The Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, *et seq*. was in full force and effect during the relevant time period applicable to this Complaint.

109.    Plaintiff and the Arizona Subclass are consumers within the meaning of the ACFA given that Defendant's business activities involve trade or commerce,

**CLASS ACTION COMPLAINT**

are addressed to the market generally, and otherwise implicate consumer protection concerns.

110.   Defendant's CBD Products are merchandise within the meaning of the Act, and Defendant is engaged in trade or commerce within the meaning of the ACFA.

111.   The ACFA states, in relevant part, as follows:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

112.   When Defendant developed, manufactured, marketed, and sold the CBD Products, it was involved in the conduct of trade and commerce under the ACFA.

113.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the CBD Products misled consumers acting reasonably as to the nature, ingredients and effectiveness of the CBD Products, and moreover, that the CBD Products were legal dietary supplements with legal delivery instructions when, in fact, they were not.

**CLASS ACTION COMPLAINT**

114.   Defendant concealed its knowledge of the true nature, ingredients and effectiveness from consumers like Plaintiff and the Arizona Subclass Members and instead sold the misrepresented CBD Products as legal dietary supplements with legal delivery instructions for normal use.

115.   Defendant's intentional misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the ACFA.  Specifically, Defendant violated the ACFA when it sold the misrepresented CBD Products as illegal dietary supplements with illegal delivery instructions.

116.   Defendant's deceptive practices including, but not limited to, the marketing of the CBD Products, were designed to induce Plaintiff and the Arizona Subclass members to purchase the CBD Products.

117.   Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because she purchased the Products in reliance on Defendant's false and misleading labeling claims that the Products, among other things, contained the ingredients stated on the Products' labeling and moreover that the Products were legal dietary supplements with legal delivery instructions as claimed on the Products' labeling and Defendant's website.

118.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the ACFA because Defendant has

**CLASS ACTION COMPLAINT**

advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

119.  Defendant profited from its sale of the falsely and deceptively advertised the CBD Products to unwary consumers.

120.  Had Defendant disclosed the true nature and quality of the CBD Products, Plaintiff and the Arizona Subclass Members would not have purchased the CBD Products.

121.  Defendant continues to violate the ACFA through its repeated and continued misrepresentations.

122.  As a direct and proximate result of Defendant's unfair acts or practices alleged herein, Plaintiff and Arizona Subclass members were damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

//

//

//

//

//

//

**CLASS ACTION COMPLAINT**

## COUNT IX
### Declaratory Relief Under the Declaratory Judgment Act
### (On Behalf of the Nationwide Class or,
### Alternatively, the California Subclass and/or Arizona Subclass)

123.    Plaintiffs reallege and incorporate by reference paragraphs 1-40 as if fully set forth herein.

124.    Plaintiffs Shaw and Colette bring this cause of action on behalf of the Nationwide Class and/or the California Subclass and/or Arizona Subclass.

125.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

126.    Pursuant to 28 U.S.C. § 2201, *et seq*., there is an actual controversy between Defendant and Plaintiffs concerning whether:

a.    Defendant has misrepresented the nature, ingredients and effectiveness of the Products; and

b.    Defendant knew or should have known of the misrepresentations regarding the efficacy of the Products.

127.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

128.    Despite findings which have proven Defendant's representations false, Defendant continues to represent the nature, ingredients and effectiveness of the

33

**CLASS ACTION COMPLAINT**

Products, specifically labeling the Products as illegal "dietary supplements" and has otherwise failed to correct those misrepresentations.

129.   Accordingly, based on Defendant's repeated and continued misrepresentations, Plaintiffs seek a declaration that Defendant has misrepresented the nature, ingredients and effectiveness of the Products and that its actions are unlawful.

130.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Products. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.   Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B.   Enter an order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

C.   Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products;

34

**CLASS ACTION COMPLAINT**

D.     Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiffs and the members of the Class, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

E.     Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

F.     An order awarding Plaintiffs and the classes pre-judgment and post-judgment interest as allowed under the law;

G.     For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

H.     For such other and further relief as this Court deems just and appropriate.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  December 3, 2019                    Respectfully Submitted,

By:  <u>/s/ Jonathan Shub</u>
Jonathan Shub (CA Bar #237708)
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: 215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Nick Suciu III*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.

**CLASS ACTION COMPLAINT**

Bloomfield Hills, Michigan
48302
Tel: 313-303-3472
nicksuciu@bmslawyers.com

Gregory F. Coleman*
Rachel Soffin*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: 865-247-0080
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com

***Pro Hac Vice Application
Forthcoming***

***Counsel For Plaintiff
And The Class***

36

**CLASS ACTION COMPLAINT**